# IN THE UNITED STATES DISTRICT COURT FOR THE

## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. CR-09-151-L |
| | ) | |
| DANIEL KNIGHT HAYDEN, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The government submits this sentencing memorandum to assist the Court in sentencing defendant, Daniel Knight Hayden. The Court has scheduled the sentencing hearing for February 2, 2010 at 2:00 pm.

The government's memorandum focuses on two of the defendant's requested additions to the Presentence Investigation Report ("PSR"). The defendant argues that he should receive a four-level deduction because his actions were a "single instance evidencing little or no deliberation", pursuant to United States Sentencing Guideline ("U.S.S.G.") § 2A6.1(b)(6). In support of this request, the defendant contends that his testimony at trial of his being drunk at the time he posted his tweets on Twitter, show that his actions were not deliberate. In addition, the defendant requests a two-level deduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1. In support of this request, the defendant requests that he has never denied his actions, but rather proceeded to trial to preserve a potential issue

of first impression for appeal. The government submits that both requests should be denied.

## STATEMENT OF FACTS

On May 6, 2009, a federal grand jury returned a one-count Indictment charging the defendant with transmitting a threatening communication in interstate commerce on April 11, 2009, in violation of Title 18, United States Code, Section 875(c). On June 29, 2009, the defendant filed several pre-trial motions and the government filed its responses on July 2, 2009. The Court held a hearing on the defendant's motions on July 6, 2009. After the hearing, the Court denied some of the defendant's motions while dismissing others due to those issues being moot. On July 20, 2009, the defendant proceeded to jury trial. Testimony at trial established that on April 14, 2009, the Federal Bureau of Investigation (FBI) Oklahoma City field office received an alert from FBI Headquarters to conduct an investigation into threatening messages that had been posted on Twitter, an internet social networking website, on April 11, 2009. (Tr. 22). The messages were posted by a person using the name "CitizenQuasar." (Tr. 22).  Oklahoma City FBI agents went to the website and observed several threatening messages posted on April 11. (Tr. 23). These messages included:

"The WAR wWIL start on the stepes of the Oklahoma State Capitol. I will case the first sotne. In the meantime, I await the police." Posted at 7:59 PM from web. [sic]. (Tr. 28).

"I really don' give a shit anymore. Send the cops around. I will cut their

2

heads off the heads and throw the on the State Capitol steps." [sic]. Posted

at 8:17PM April 11, 2009 from web. [sic]. (Tr. 29).

Agents continued to monitor "CitizenQuasar's" Twitter page on April 14-15, 2009

as they worked to determine "CitizenQuasar's" true identity. (Tr. 37). During the course

of monitoring the Twitter page, "CitizenQuasar" posted additional messages concerning

the same subject matter. (Tr. 37).  The messages from April 14, 2009 included:

"Tomorrow at NOON at the Oklahoma Stae Capitol. . . BE THERE! We

need warm bodies." Posted at 7:14 PM April 14, 2009 from web. [sic]

"Maybe it's time to die. Let's see if I can video record the Highway Patrol

at the entrance to the Oklahoma State Capitol. . ." Posted at 9:49PM April

14, 2009 from web. [sic] (Tr. 38).

On April 15, 2009, "CitizenQuasar" wrote:

"Locked and loaded for the Oklahoma State Capitol. Let's see what hap-

pens." Posted at 12:49 AM April 15, 2009 from web. [sic]. (Tr. 40).

The defendant was found guilty of the charge alleged in the Indictment. The sentencing is

currently set for February 2, 2010.

3

<u>**ARGUMENT AND AUTHORITY**</u>

**I.     The defendant's conduct may arguably have been a single instance, however, his actions evidenced more than little deliberation and, therefore, a four-level decrease pursuant to U.S.S.G. § 2A6.1(b)(6) is unwarranted.**

The Tenth Circuit reviews a district court's evidentiary determination at a sentencing hearing for clear error. *United States v. Cruz*, 58 F.3d 550, 553 (10th Cir. 1995). The identification of a "single instance" of threat is a heavily fact-dependent process. *United States v. Russell*, 322 Fed. Appx. 920, 923 (11th Cir. Apr. 13, 2009) (unpublished).  The Circuits generally agree that a single threat and a single instance are not synonymous. See *United States v. Freeman*, 176 F.3d 575 (1st Cir. 1999); *United States v. Humphreys*, 352 F.3d 1175 (8th Cir. 2003); *United States v. Sanders*, 41 F.3d 480 (9th Cir. 1994); *United States v. Russell*, 322 Fed. Appx. 920 (11th Cir. Apr. 13, 2009) (unpublished). "Single instance" is often interpreted to suggests both a temporal relationship and a single purpose or scheme. *United States v. Humphreys*, 352 F.3d at 1176.  The *Humphreys* court stated that the term "single instance" suggests that the reduction applies only to defendants whose threats are the product of a single impulse, or are a single thoughtless response to a particular event. *Id*. at 1177 (citing *United States v. Sanders*, 41 F.3d 480, 484 (9th Cir. 1994)). Courts have held that the "single instance" reduction does not apply when a defendant makes a number of similar threats over an extended period of time. *United States v. Freeman*, 176 F.3d 575, 579 (1st Cir. 1999); *United States v. Edgin*, 92 F.3d 1044, 1047 (10th Cir. 1996); *but see United States v. Sanders*, 41 F.3d 480, 484 (9th

Cir. 1994) ("...conduct involving several threats may constitute a 'single instance' within the meaning of § 2A6.1(b)(2)").

The Circuits differ as to what evidence is sufficient to allow a district court's inference that deliberation preceded a threat. The Fifth Circuit upheld the denial of a reduction for little or no deliberation where the district court determined that a defendant deliberated before sending a threatening letter based on his deliberate securing of stationery and postage, his composition of the letter, his search for the address of the recipient, and his taking the letter to the mailbox. *United States v. Stevenson*, 126 F.3d 662 (5th Cir. 1997). The Tenth Circuit upheld the denial of a reduction for little or no deliberation where the district court determined that a defendant deliberated before calling a telephone hotline and making threatening calls. *United States v. Freeman*, 176 F.3d 575, 579 (1st Cir. 1999). The court's ruling was based on evidence which showed that the defendant first obtained the number to the hotline, called the hotline eight times over two days, and continued to build upon the details of his threat during each phone call. *Id*. Additionally, the court in *Freeman* specifically found that "the mere fact that [defendant] was supposedly drunk when placing each of the calls does not require a finding of little or no deliberation." *Id*.

Although the determination of whether communications are a "single instance" is a heavily fact-dependent process, the government submits that the defendant's tweets may fall into the definition of a "single instance." The defendant's tweets occurred over the

course of four days, however, it appears that he only made two clear threats throughout his many tweets about the tea party protest. Those threats were on April 11, 2009 when the defendant stated that he would cut the heads off of cops and throw them on the state capitol and on April 15, 2009 when the defendant stated that he was locked and loaded for the Oklahoma State Capitol. (Tr. 31; 40). The evidence does not indicate that the defendant communicated several threats, through several mediums, to several victims and, therefore, potentially falls into the definition of a "single instance."

Although the defendant's tweets may constitute a "single instance", the evidence does show that the defendant's tweets were "more than little or no deliberation." The defendant's threats were included amongst several clear and coherent comments, which provided context for the defendant's threats. During the defendant's April 11, 2009 tweets, he referenced Earl Shaffer as a participant in the tea party tax protest and included Earl Shaffer's phone number. (Tr. 32). The defendant presumably took the time to look up Earl Shaffer's number and his inclusion of Earl Shaffer's number was deliberate given the leadership role that Earl was supposed to play in the tea party tax protest.

Additionally, the defendant's statements concerning the tea party, which occurred over four days, were not solely about the tea party protest. Despite the breaks in the defendant's tweets about the tea party, whenever he returned to discussing the tea party, he was always able to pick up where he last left off. The defendant contends that he was drinking and blacked out during his tweets, however the government submits that the

defendant was conscious of his actions, as his tweets about the tea party were more than mere ramblings. Further, the defendant testified on direct and cross examination that his statements were symbolic and each had a meaning beyond their face value. (Tr. 83-94).  If the defendant's tweets were truly drunken ramblings, then he would not have an explanation for his messages, nor would he have been able to pick up where he left off after the changes in subject matter. All of these actions suggests that the defendant deliberated prior to posting these tweets about the tea party protest. Accordingly, the defendant's request for a four-level reduction should be denied.

**II.     The defendant's request for a reduction for acceptance of responsibility should be denied.**

United States Sentencing Guideline § 3E1.1 Application Note 2 states "[The acceptance of responsibility] adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial. . . .".  "Pleading not guilty and requiring the government to prove guilt at trial demonstrate denial of responsibility, regardless of how easily the government can prove guilt." *United States v. Portillo-Valenzuela*, 20 F.3d 393 (10th Cir. 1994). Application Note 2 also states, "In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to go to trial." U.S.S.G. § 3E1.1, n. 2. "This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt." U.S.S.G. § 3E1.1, n. 2. The Tenth Circuit has applied this

7

exception sparingly. *United States v. Aguayo-Gonzalez*, 472 F.3d 809, 812 (10th Cir. 2007). In *Aguayo-Gonzalez*, the Court noted that it upheld a district court's adjustment under U.S.S.G. § 3E1.1 where the defendant admitted to his criminal conduct in testimony at trial, but disputed whether he had the necessary *mens rea*. *Id.* However, the Court also stated that in numerous other cases they have denied the adjustment where a defendant attempted to deny a key factual element of the crime. *Id.* According to Application Note 2 to U.S.S.G. § 3E1.1, in the event the court determines that a defendant went to trial to preserve a constitutional challenge to a statute, a determination of whether an adjustment for responsibility should be given will be based primarily upon pre-trial statements and conduct.

Here, the defendant did put the government to its burden of proof at trial. The government acknowledges that the defendant stipulated to his communications traveling in interstate commerce, however, the defendant did not accept responsibility for his posting of communications that could be reasonably perceived as a threat. Prior to trial, the defendant filed several motions to limit and challenge the government's evidence. At the time of the defendant's arrest, the defendant informed Special Agent McAndrews that he knew the FBI was there due to inflammatory messages that he had written. Prior to trial, the defendant sought to suppress these statements on the basis that they were obtained in violation of his Miranda rights as he had paranoia issues which prevented him from knowingly and voluntarily waiving his rights. Also, during the defendant's post-

arrest interview and during trial, the defendant claimed that he didn't remember the tweets because they occurred during a drunken blackout.  However, during trial, and now at the time of sentencing, the defendant claims that his tweets were symbology and that his First Amendment rights were being infringed because his tweets were political speech. The government submits that the defendant did not go to trial solely to preserve his right to a constitutional challenge.

Furthermore, an examination of the defendant's pre-trial conduct also exhibits that his actions do not warrant a reduction for acceptance of responsibility. The defendant was released to the Carver Center and placed on conditions prior to trial. On June 11, 2009, a Petition for Action on Conditions of Pretrial Release was filed against the defendant. (Doc. 26). The petition alleged that the defendant threatened employees at the Carver Center. A hearing was held on the petition on June 11, 2009 before the Honorable Judge Bana Roberts and Judge Roberts determined that the defendant was guilty of the offense alleged. Due to the finding of guilt, the defendant was ordered detained in the Grady County Detention Center pending trial. (Doc 16.) The defendant's actions of threatening employees at the Carver Center was very similar in nature to the actions which, at that time, he was charged with in the Indictment. The defendant's actions prior to and during trial clearly demonstrate that he did not accept responsibility for his actions. Therefore, an adjustment for acceptance of responsibility is unwarranted.

9

## CONCLUSION

Based on the foregoing, the government respectfully requests that the Court deny the defendant's requests for a four-level decrease for a single instance evidencing little or no deliberation, pursuant to U.S.S.G. § 2A2.1(b)(6), and his request for a two level adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1.

Respectfully submitted,

SANFORD C. COATS
United States Attorney

s/Andre' B. Caldwell
Assistant U.S. Attorney
Bar Number:  22092
210 Park Avenue, Suite 400
Oklahoma City, Oklahoma  73102
(405) 553-8733 (Office)
(405) 553-8888 (Fax)
andre.caldwell@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2010, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants: Joseph L. Wells

.

s/Andre' B. Caldwell
Assistant U.S. Attorney

ABC:ke